IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ARMANDO CARO BONET AND IRIS SANTOS DIAZ<br>Plaintiffs<br><br>V.<br><br>LOTUS MANAGEMENT LLC; JORGE E. PEREZ; LIVEPAD INTERNATIONAL, INC.; DAMARIS SEGUINOT; RLI LLP AND CARLOS J. RAMIREZ<br><br>Defendants | CIVIL NO.14-1925<br><br>RACKEETER INFLUENCED AND CORRPUT ORGANIZATION ACT "RICO" BREACH OF CONTRACT AND DAMAGES<br><br>PLAINTIFFS DEMAND TRIAL BY JURY |

## COMPLAINT

**TO THE HONORABLE COURT:**

COME NOW the plaintiffs. Through their undersigned attorney and very respectfully state, allege and pray:

### I. JURISDICTION AND VENUE

1. This Honorable Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(a). In addition, this Honorable Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332 as there is total diversity between plaintiffs and defendants. Venue is proper pursuant to 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965.

### II. PARTIES

2. Plaintiff Dr. Armando Caro Bonet is a citizen and resident of Puerto Rico.

3. Plaintiff Iris Santos Díaz is citizen and resident of Puerto Rico.

4. Lotus Management LLC is upon information and belief, a Florida Corporation, with its principal place of business in Florida.

5. Jorge E. Pérez is, upon information and belief, a resident and citizen of the State of Florida.

6. Livepad International Inc is upon information and belief, a Florida Corporation, with its principal place of business in Florida.

7. Damaris Seguinot is, upon information and belief, a resident and citizen of the State of Florida.

8. RLI LLP is upon information and belief, a British Corporation with its principal place of business in the United Kingdom.

### III. THE RICO ALLEGATIONS

1. On the latter part of January 2012, Dr. Armando Caro Bonet (Caro) was approached by a friend and was invited to participate in an investment related to the gold market. Caro was told it was open only to a select group of investors and that he could bring a friend. Caro invited Iris Santos Díaz (Santos). Several days later, Caro and Santos met Jorge Pérez Lugo, Dr. José Martínez Polanco and Kevin Acosta. Later, on February 8, 2012, there was another meeting with Jorge Pérez, Damaris Seguinot and José Martínez.  These communications were via U.S. Mail and wire, in violation of 18 U.S.C. §§ 1341, 1342 and 1343.

2. Caro and Santos were told that the operation consisted in buying unrefined gold to artisanal miners in Perú, refining it and selling it in one-kilo bunion. In the beginning, the money invested would to buying artisanal mining machines to work some mines in Perú where the government had given them a franchise for the mining operation with the restriction that it had to be a non-contaminating operation. Caro and Santos were shown photos, documents and were told of the contacts these persons had in Perú.

3. The proposal made to Caro and Santos was that each was that for each kilo of gold that we bought from them at market price, they would pay 8.3% each month for three-months. After this period, Caro and Santos would each receive a kilo of gold, .999% pure. They were assured that the principal we would invest was guaranteed. Both decided to invest and February 13, 2012 they signed a Memorandum of Understanding (MOU) and Promissory Note with Lotus Management LLC (Lotus). Jorge E. Pérez signed both as representative of Lotus. The signature by Pérez says Feb. 13, 2012. The MOU says 8.3% profit each month after the first 30 days. The Promissory Note states that defendants received $55,265.85 each from Caro and Santos, to be paid by May 13, 2012. There is an interest rate 5% for non payment, 10 days after due date. These communications were via U.S. Mail and wire, in violation of 18 U.S.C. §§ 1341, 1342 and 1343.

4. During the month of March, Caro and Santos each received the 8.3% interest, to wit, $4,562.35. During the month of April, they received the same amount of interest. After the April payment, they received a call from Jorge Pérez, proposing the purchase of more gold. Pérez allegedly would give Caro and Santos the option to purchase this gold and that there was a limited amount of time to proceed. Caro and Santos discussed the situation and given the good performance and defendants' assurances of the safety of the investment, they decided to invest more. These communications were via U.S. Mail and wire, in violation of 18 U.S.C. §§ 1341, 1342 and 1343.

5. On March 23, 2012, Caro and Santos signed a new contract for the purchase of 4 more one-kilo gold bars, .999% pure. Again, Caro and Santos signed a MOU and a Promissory Note for $217,454.96, to be paid on March 23, 2013 with the same late charges. This time, however, the documents were signed by Damaris Seguinot president and legal representative of

Livepad International, Inc., and the monthly interest rate would be 10%. Present during the signing were Jorge Pérez, Damaris Seguinot and José Martínez.

6. Jorge Pérez, Damaris Seguinot and José Martínez convinced Caro and Santos to open an offshore account in Anguilla. They would have access to the account through a debit card. They filled out the forms but the account was never opened. From that moment on, Caro and Santos stopped receiving payments. When they called Jorge Pérez, they were told that it was Carlos Ramírez' job to deal with the gold and he was having trouble but that their investment was safe. Plaintiffs continued telephone and email communication with defendants in violation of 18 U.S.C. §§ 1341, 1342 and 1343.

7. Subsequently, Caro and Santos were offered a new contract, via email and phone, in violation of 18 U.S.C. §§ 1341, 1342 and 1343, in which Carlos Ramírez would personally guarantee the payment of their contributions, and in compensation for the delays, he would pay us a 45% dividend every 90 days. The contract would be for one year and was signed August 10, 2012. From this contract, Caro and Santos did not receive any compensation and were given excuses both over the phone and via email. Jorge Pérez would continuously blame Carlos Ramírez for the failure to deliver as per the contracts.

8. Jorge Pérez, Carlos Ramírez, Damaris Seguinot, Livepad, Lotus and RLI LLP conspired with each other to fraudulently deprive plaintiffs of hundred of thousands of dollars. All above mentioned illegal actions and those described infra, caused, among other things, for plaintiffs to be deprived of hundreds of thousands of dollars.  This was done via the phone and wire, in violation of 18 U.S.C. §§ 1341, 1342 and 1343.

**COUNT 1: By Plaintiffs Against Defendants For Violation Of 18 U.S.C. § 1962(c)**

9. Plaintiffs reallege and incorporate by reference all previous paragraphs.

10. The RICO statute provides inter alia:

It shall be unlawful for any persons employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

11. The relevant time period for this case is 2012-2014, although it was not until 2014 that plaintiffs became aware of the enormity of the fraud. Defendants Jorge Pérez, Carlos Ramírez, Damaris Seguinot, were and are at all times relevant to this action, a RICO "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

## The RICO Enterprise

12. Defendants have used Livepad, Lotus and RLI LLP as an "enterprise," within the meaning of 18 U.S.C. § 1961(4), to carry out its pattern of racketeering activity. Defendants possessed and continue to possess a common purpose and goal, a membership, organizational structure, and ongoing relationships between them with sufficient longevity to permit and enable pursuit of the Enterprise's purpose and long-term objective through a continuous course of conduct that affected and continues to affect interstate and foreign commerce.

13. The Enterprise exists separate and apart from its pattern of racketeering activity, inasmuch as Defendants and the Enterprise had multiple goals, not all of which are fraudulent. The lawful activity engaged in by the Enterprise is, upon information and belief, investments. Defendants from 2012 to 2014 used this Enterprise to conduct the related acts of mail and wire fraud comprising the pattern of racketeering.

14. Defendants are "persons" under the civil RICO statute because they knowingly and fraudulently conducted and participated in the conduct, the management and the operation of the Enterprise's affairs, directly or indirectly, through a pattern of racketeering activity in

5

violation of 18 U.S.C. § 1962(c). Defendants engaged in such unlawful conduct by using the Enterprise to conduct lawful activities as well as to further its fraudulent scheme of offering plaintiffs gold and dividends which they did not pay in exchange for hundreds of thousands of dollars. All this was done through mail or interstate wires as discussed, *supra*. They also caused the Enterprises customers to communicate by mail or interstate wires with it, such as paying said bills.

### The RICO Predicate Acts

16. Defendants' engaged in a fraudulent scheme to defraud the Enterprises and plaintiffs of their profits and contributed funds.

17. For the purpose of devising and carrying out their scheme and artifice to defraud the Enterprise and plaintiffs by means of false and fraudulent pretenses, representations and promises, defendants Jorge Pérez, Carlos Ramírez and Damaris Seguinot did place in an authorized depository for mail, and knowingly caused to be delivered by the United States postal service, checks, funds requests, and obtained funds through this medium, as well as other matters, in violation of 18 U.S.C. § 1341, or aided and abetted in such criminal acts, as previously described, under 18 U.S.C. § 2.

18. For the purpose of devising and carrying out their schemes and artifice to defraud the Enterprise and plaintiffs by means of false and fraudulent pretenses, representations and promises, Defendants caused to be transmitted by means of wire communication in interstate commerce, writings, signals and sounds, to wit, interstate electronic mail messages and/or facsimile in violation of 18 U.S.C. § 1343, or aided and abetted in such criminal acts, as previously described, under 18 U.S.C. § 2.

19. Examples of these predicate acts of mail and wire fraud include, but are not limited

to (upon information and belief, numerous others will be identified in the process of discovery), the following:

a. From 2012 on until 2014, Jorge Pérez, Carlos Ramírez, Damaris Seguinot conspired with each other to obtain money from plaintiffs, fraudulently pay them money in order to entice them to further invest in the fraudulent scheme;

b. From 2012 on until 2014, Jorge Pérez, Carlos Ramírez, Damaris Seguinot conspired with each other to fraudulently assure plaintiffs that everything was well and that there were temporary problems to obtain the gold and pay them;

c. From 2012 on until 2014, Jorge Pérez, and Damaris Seguinot conspired with each other to fraudulently assure plaintiffs they were not at fault and that the only person responsible was Carlos Ramírez.

**The Pattern Of Racketeering Activity**

20. Defendants' previously alleged RICO predicate acts in furtherance of its scheme to the Enterprise's customers constituted a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) because the predicate acts are related and continuous. Each predicate act had the same or similar purpose: the predicate acts involved material misrepresentations, omissions and concealment in a scheme to defraud the Enterprise and plaintiff. Included in these predicate acts are those situations where defendants' fraudulent scheme of offering plaintiffs gold and dividends which they did not pay in exchange for hundreds of thousands of dollars. This pattern of racketeering is separate from and distinct from the legitimate operations of the Enterprise alleged herein.

21. Defendants are associated with the Enterprise and did conduct or participate, directly and indirectly, in the management or operation of its conduct of the affairs of the

Enterprises through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1)(B) and 1961(5) and 1962(c), to wit:

a. Multiple instances of mail fraud in violation of 18 U.S.C. § 1341;

b. Multiple instances of wire fraud in violation of 18 U.S.C. § 1343.

22. Plaintiffs have sufficiently alleged these predicate acts and pattern of racketeering to state a claim under 18 U.S.C. § 1962. As a proximate result of the pattern of racketeering activity and RICO violations engaged in by Defendants, Plaintiffs have suffered injury to their business and property.

**Relatedness And Continuity Of The Racketeering Activity**

23. All of the predicate acts alleged above are related to the scheme of Defendants defrauding the Enterprise's customers. The acts are all related to extract the maximum amount of revenue from the Enterprise and plaintiffs to line their own pockets by, *inter alia*, their fraudulent scheme of offering plaintiffs gold and dividends which they did not pay in exchange for hundreds of thousands of dollars. Continuity is demonstrated by the predicate acts alleged above because the pattern of racketeering involves multiple predicate acts and related predicate acts that have taken place over several years. These predicate acts constitute the regular way that Defendants conducted business.

24. As a proximate result of the pattern of racketeering activity and RICO violations engaged in by Defendants, Plaintiffs have suffered injury to their business and property.

**COUNT 2: By Plaintiffs Against Defendants amongst themselves For Violation Of 18 U.S.C. § 1962(d) By Conspiring To Violate 18 U.S.C. § 1962(c)**

25. Plaintiffs reallege and incorporate by reference all previous paragraphs.

26. The statute provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section. "

27. Defendants violated 18 U.S.C. § 1962(d) by conspiring with each other to engage in the predicate acts alleged to form the violation of 18 U.S.C. § 1962(c), as described above. Defendants agreed to the objective of this conspiracy. Defendants took overt acts in furtherance of that conspiracy.

28. The relevant time period for Defendants' conspiracy stems from at least the year 2012 to the year 2014.

29. As a proximate result of the overt acts taken by Defendants, plaintiffs and they have suffered injury to their business and property.

## DAMAGES

30. To date, plaintiffs has suffered the following damages caused by defendants acts as described *supra*:

| | |
|---|---|
| a. Principal for the first contract for Caro | $55,265.85 |
| b. Principal for the first contract for Santos | $55,265.85 |
| c. Interest as per the first contract for Caro | $137,611.97 |
| d. Interest as per the first contract for Santos | $137,611.97 |
| e. Default penalty as per the first contract for Caro | $9,643.89 |
| f. Default penalty as per the first contract for Santos | $9,634.89 |
| g. Principal for the second contract for Caro | $217,454.96 |
| h. Principal for the second contract for Santos | $217,454.96 |
| i. Interest as per the second contract for Caro | $630,619.38 |
| j. Interest as per the second contract for Santos | $630,619.38 |
| k. Default penalty as per the second contract for Caro | $42,403.72 |
| l. Default penalty as per the second contract for Santos | $42,403.72 |

    k. TOTAL $2,185,999.54

31. Plaintiffs also request an award of reasonable attorneys fees pursuant to 18 U.S.C. § 1964(c).

## THE STATE LAW CLAIMS

31. Plaintiffs reallege and incorporate by reference all previous paragraphs.

32. Plaintiffs were defrauded by defendants in the two contracts that they celebrated. No payments were made to plaintiffs except for the first one in April 2012. The acts of fraud and deceit, as well as the times and dates they were perpetuated, and the fraudulent statements are discussed in all previous paragraphs. Hence, defendants are liable to plaintiffs for all their damages.

33. In addition to the fraud stated in this complaint, defendants violated the covenants of good faith and fair dealing in violation of Article 1210 Puerto Rico Civil Code, 31 L.P.R.A. § 3375 and defendants are liable to them due to their acts and admissions.

34. Plaintiffs' damages, as discussed in paragraph 30 of the complaint, amount to $2,185,999.54.

## JURY DEMAND

35. Plaintiffs demand that all questions of fact be decided by a jury.

WHEREFORE: Plaintiffs respectfully request from the Honorable Court judgment should be rendered in Plaintiffs' favor against Defendants, as follows:

  a. An award of compensatory damages of $1,092,999.77 for each plaintiff;

  b. An award of treble damages herein pursuant to 18 U.S.C. § 1964(c);

  c. An award of attorneys' fees pursuant to 18 U.S.C. § 1964(c);

  d. Pre-judgment interest on all awards;

e. Judgment in state court claims in the amount of $1,092,999.77 for each plaintiff;

e. All further relief as the Court and/or the jury may deem appropriate, legal or equitable, in any form to which Plaintiffs may be entitled.

Respectfully submitted on this 29 th day December of, 2014.

/s *John E. Mudd*
John E. Mudd
Bar Number: 201102
Attorney for Plaintiffs
LAW OFFICES JOHN E. MUDD
P. O. BOX 194134
SAN JUAN, P.R. 00919
(787)754-7698, (787)413-1673
Fax. (787)753-2202
email jemudd@yahoo.com